IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 20, 2002

## STATE OF TENNESSEE v. FRANK GAITOR

**Appeal from the Criminal Court for Washington County**
**No. 25133B     Robert E. Cupp, Judge**

_____

**No. E2001-02531-CCA-R3-CD**
**December 23, 2002**
_____

Frank Gaitor appeals from his Washington County Criminal Court convictions of Class B felony possession of 0.5 grams or more of cocaine with intent to sell and misdemeanor simple possession of marijuana. He is presently serving an effective 22-year sentence as a Persistent Offender for these crimes. In this direct appeal, he raises numerous challenges to the firmity of the conviction proceedings. Upon examination, however, none of these claims warrant relief. Thus, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Clifton R. Corker, Johnson City, Tennessee, for the Appellant, Frank Gaitor.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Steve Finney, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Viewed in the light most favorable to the state, the evidence at trial demonstrated that on November 30, 1998, members of the First Judicial District Drug Task Force went to the Fairfield Inn in Johnson City, where they were informed the defendant and Lynn Benson were guests, for the purpose of arresting them on outstanding warrants. At approximately seven o'clock that evening, agents observed the defendant and Ms. Benson drive into the hotel parking lot in a dark red, small, four-door vehicle. The defendant was driving. The two got out of the car and went to an upstairs room in the hotel.

In order to get the two to come out of the room without damaging hotel property, Steve Wheat, the Assistant Director of the Drug Task Force, called the defendant and Ms. Benson's hotel room and claimed to be an employee of the hotel. He told Ms. Benson, who answered the

phone, that the vehicle in which she and the defendant had arrived had been involved in an accident and requested that they come downstairs. The defendant and Ms. Benson began to leave the room, and as they did so, agents of the Drug Task Force who had stationed themselves outside the room, took the two into custody.

Inside the hotel room, officers found a small amount of marijuana in a plastic bag and a cigar "blunt" on the nightstand. The defendant claimed that the marijuana was his, not Ms. Benson's. Upon subsequent testing, the marijuana was determined to weigh less than one-tenth of an ounce.

As the defendant was taken through the parking lot, he was asked whose car he had been driving, and he responded that it belonged to some girl named Shawna. He was asked whether there was anything in the car, meaning drugs, and he responded that there was nothing in it, and the officers could search it. With the assistance of a police dog, they proceeded to do so and discovered a plastic bag in the ash tray which contained several smaller bags, each containing a single rock of what appeared to be crack cocaine. An expert from the Tennessee Bureau of Investigation later identified the substance in the bag as six rocks of cocaine base weighing a cumulative total of 5.8 grams. Members of the drug task force estimated the street value of the cocaine to be in the range of $1400 to $1600.

According to members of the Drug Task Force, they had seen the defendant driving the vehicle from which the crack cocaine was recovered in the days and weeks prior to November 30.

Shawna Lee Warren Whitaker testified that in November 1998, she owned a burgundy vehicle which she identified alternately as a Plymouth Horizon and a Dodge Shadow. She was living in Ohio at this time, and she left the car in the custody of her father. Ms. Whitaker testified that her father told her that he had rented her car to the defendant, who was a family friend. She received $200 while she was in Ohio for rental of the car. When Ms. Whitaker returned to Tennessee sometime prior to Christmas 1998, her car was in the hotel parking lot with underinflated tires. Her husband had to have the car retrieved by a tow truck. When Ms. Whitaker saw the defendant sometime later, he told her not to worry because she was not in any trouble.

Jaquetta Lynn Benson testified as a witness for the state. In exchange for her testimony, charges against her in this case had been *nolle prosequied*. Further, upon truthful testimony in the defendant's case, she was to receive a recommendation for a two-year probated sentence in a separate case for her guilty plea to the offense of facilitation of sale of cocaine. With some reluctance, Ms. Benson recounted the events of the date of the offense. She had been with the defendant that day in a maroon, four-door car. They went to his mother's house. The defendant got out of the car, and when he returned, he had a sandwich bag in his hand. Ms. Benson first testified that she did not know what was in the bag, but she later acknowledged that although she did not see the contents, she "knew" it was crack cocaine. Ms. Benson claimed she did not know whether the defendant had the bag in his hand when he first got out of the car, but she acknowledged a prior

statement in which she said the defendant had the bag when he got out of the car at his mother's house. Ms. Benson testified that when they went to the hotel, they took their belongings upstairs. She thought the defendant took the sandwich bag inside with him. During a vigorous cross-examination, Ms. Benson acknowledged that she had a cellular telephone in her possession, even though she had no income. She also admitted having previously signed an affidavit of indigency in which she claimed she had no income in the year 1997, even though she filed a tax return for 1997 on which she listed income of $113.

The defendant's trial strategy centered on attempts to discredit the state's witnesses, particularly Ms. Benson and Larry Robbins.[1] Mr. Robbins was a former member of the Drug Task Force whose employment with the City of Johnson City was terminated following an internal department dispute unrelated to the defendant's case or any other criminal case.[2] The defendant's only witness was a forensic scientist from the Tennessee Bureau of Investigation who testified that he had been unable to recover any fingerprints on the seven plastic bags recovered with the crack cocaine.

The jury found the defendant guilty of possession of 0.5 grams or more of cocaine with intent to sell and simple possession of marijuana. At the sentencing hearing, the trial court found the defendant to qualify as a Range III Persistent Offender and imposed concurrent sentences of 22 years for the felony cocaine conviction and eleven months, 29 days for the misdemeanor marijuana conviction.

Following unsuccessful rulings on the motion for new trial and amended motion for new trial, the defendant initiated this appeal.

The issues before us are numerous and are as follows:

(1)     Whether the trial court properly denied the defendant's motion to suppress evidence obtained as a result of the warrantless search of the car the defendant was driving on the date of his arrest.

(2)     Whether the trial court should have granted the defendant's motion for judgment of acquittal.

(3)     Whether the trial court made proper evidentiary rulings in
   (a)     Excluding evidence regarding Larry Robbins' termination from the Drug Task Force;

_____

[1] The defendant's closing argument has not been included in the appellate record. Our characterization of defense strategy is based upon the defendant's opening statement, cross-examination of state's witnesses, and defense evidence.

[2] According to Mr. Robbins, the termination was a consequence of his having reported sexual harassment within the department to the city commissioners. The witness apparently had litigation or other proceedings pending relative to his dismissal.

(b)     Admitting Shawna Whittaker's testimony regarding the defendant's rental of her car; and

(c)     Admitting evidence that the defendant had arrest warrants pending.

(4)     Whether the trial court should have continued the trial upon the state's late disclosure of a witness' location.

(5)     Whether the trial court should have granted the defendant's motion for removal of trial counsel.

(6)     Whether the trial court erred in its instruction to the jury regarding Lynn Benson's guilty plea to facilitation of cocaine sale.

(7)     Whether the trial court properly instructed the jury on the definition of the term "knowing."

(8)     Whether the trial court erred in providing the jury with excerpts of the testimony of witnesses, rather than transcripts of the entire testimony of these witnesses.

Because no harmful error occurred, we affirm.

# I

We first consider whether the trial court properly denied the defendant's motion to suppress evidence obtained as a result of the warrantless search of the car the defendant was driving on the date of his arrest. The defendant claims that his consent to the search was not voluntary.

The search in this case was conducted without a warrant. A warrantless search is presumptively unreasonable under the Fourth Amendment. *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130 (1993). However, there are a few exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507 (1967); *Fuqua v. Armour*, 543 S.W.2d 64, 66 (Tenn. 1976). Those who seek to except a search from the warrant requirement must show that the officers had compelling reasons to justify the search. *Coolidge v. New Hampshire*, 403 U.S. 443, 455, 91 S. Ct. 2022 (1971); *Fuqua*, 543 S.W.2d at 67. Before the fruits of a warrantless search are admissible as evidence, the state must establish by a preponderance of the evidence that the search falls into one of the narrowly drawn exceptions to the warrant requirement. *State v. Shaw*, 603 S.W.2d 741, 743 (Tenn. Crim. App. 1980).

One exception to the warrant requirement exists when consent has been given for the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973); *State v. Bartram*, 925 S.W.2d 227, 230 (1996). This is the basis upon which the state seeks to justify the search in this case.

The evidence relative to the search is not in dispute so much as the interpretation to be drawn from that evidence. The trial court did not make findings of fact relative to its ruling denying the motion to suppress. Our review, therefore, is one of *de novo* consideration of the law with the facts viewed in the light most favorable to the state. *State v. Jennie Bain Ducker*, No.

01C01-9704-CC-00143, slip op. at 12 Tenn. Crim. App., Nashville, Mar. 25, 1999), *aff'd on other grounds,* 27 S.W.3d 889 (Tenn. 2000).

The state offered proof at the suppression hearing in the form of testimony from multiple witnesses that the defendant declared that there was no contraband in the car and told the officers they could search it.

The defendant acknowledges that he consented to the search of the vehicle he had been driving prior to his arrest. However, he claims that the totality of the circumstances fail to demonstrate that his consent was freely and voluntarily given. He points to evidence that the Drug Task Force officers discussed searching the vehicle prior to asking the defendant for consent, the lack of a signed, written consent form for the search, and more general proof that the defendant was uncooperative at the time of his arrest. He has not explained, however, the way in which these allegations overcame his voluntariness in consenting to the vehicle search.

Upon review, we are unpersuaded that the trial court erred in denying the defendant's motion to suppress.

**II**

Next, we consider whether the trial court should have granted the defendant's motion for judgment of acquittal. We consider this claim to be equivalent to a challenge to the sufficiency of the convicting evidence. *See State v. Price*, 46 S.W.3d 785, 818 (Tenn. Crim. App. 2000) (appellate court applies the same standard in reviewing both the denial of a judgment of acquittal and the sufficiency of the convicting evidence).

A criminal conviction may be aside only when the appellate court finds that the "evidence is insufficient to support the finding by the trier of fact beyond a reasonable doubt." Tenn. R. App. P. 13(e). "A jury verdict, approved by the trial court, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the state's theory." *Price,* S.W3d at 818; *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn. 1978). Following the conviction, the appellate court reviews the evidence in the light most favorable to the state and affords the state the benefit of all inferences that may be reasonably drawn from the evidence. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978). This means that issues of the credibility of witnesses and the weight to be ascribed to their testimony are matters entrusted to the trier of fact and are not issues for appellate analysis. *Price*, 46 S.W.3d at 785.

The defendant claims that Lynn Benson's testimony was contradictory about whether she knew that the defendant possessed crack cocaine, and that to the extent that Ms. Benson gave conflicting testimony about a single fact, the testimony cancels the opposing testimony. Moreover, the defendant attacks Ms. Benson's testimony as being unreliable and characterizes it as being an unsafe premise upon which to base a criminal conviction.

The defendant is correct that the rule of cancellation may apply when a witness testifies contrarily about a single fact. The supreme court has defined the rule as follows

> If two witnesses contradict each other, there is proof on both sides, and it is for the jury to say where the truth lies; but if the proof of a fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it cannot stand otherwise than unproven. For his testimony to prove it is no stronger than his testimony to disprove it, and it would be mere caprice in a jury upon such evidence to decide it either way.

*Johnston v. Cincinnati, N.O. & T.P. Ry.*, 146 Tenn. 135, 158, 240 S.W. 429, 436 (1921). However, as *Johnston* suggests, the rule is one of limited application. The rule applies only when the contradiction is not explained and when neither version is corroborated by other proof. *Taylor v. Nashville Banner Pub. Co.*, 573 S.W.2d 476, 483 (Tenn. Ct. App. 1978).

We do not view Ms. Benson's conflicting testimony in the present case to be unexplained. She first testified that she was not sure what the defendant had inside a sandwich bag in his hand, and she later testified that although she did not see what was in the bag, she "knew" that it was crack cocaine. When pressed on cross-examination, she admitted that she had not been truthful in her initial testimony about the contents of the bag.

Moreover, the second version of Ms. Benson's testimony was corroborated. A plastic bag containing crack cocaine was recovered from the car the defendant was driving on the day of his arrest.

For these reasons, the rule of cancellation does not apply to Ms. Benson's testimony.

Moreover, when her testimony is viewed in the light most favorable to the state, it is not so unreliable that it casts doubt upon the firmity of the defendant's conviction. Ms. Benson was certainly a difficult witness for both the state and the defense. She was not completely forthcoming during direct examination, and she was subjected to vigorous cross-examination about her testimony and her credibility. However, Ms. Benson's testimony was corroborated by other evidence that supports the conviction. The defendant was shown to possess a large quantity of crack cocaine packaged in a manner consistent with possession for purpose of street sales. *See State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (amount and manner of packaging of drugs may support inference of possession with intent to sell, rather than possession for personal use). No drug paraphernalia consistent with possession for personal use was recovered. *See id.* (possession with intent to sell may be inferred from absence of drug paraphernalia). The defendant, not Ms. Benson, had been seen driving the vehicle from which the cocaine was recovered in the days and weeks prior to the arrest. The jury had the prerogative, particularly in view of the corroborating evidence, to accept as true portions of Ms. Benson's testimony despite her inconsistencies and credibility issues. We are not free to revisit the determinations made by the trier of fact simply because a contrary

determination might have been made had credibility issues been determined differently and the evidence been weighed otherwise. *See Price*, 46 S.W.3d at 785.

## III

We next consider whether various evidentiary rulings made by the trial court were proper. These rulings relate to the court's excluding evidence regarding Larry Robbins' termination from the Drug Task Force, admitting Shawna Whittaker's testimony regarding the defendant's rental of her car, and admitting evidence that the defendant had arrest warrants pending.

### A - Standard of Review

As a general premise, the admission or exclusion of evidence is a matter entrusted to the discretion of the trial court. *State v. West*, 737 S.W.2d 790, 793-94 (Tenn. Crim. App. 1987). We will reverse an evidentiary ruling only if the appellant demonstrates that the trial court abused its discretion in admitting or excluding the challenged evidence. *Id.*

### B - Larry Robbins' Termination

The defendant complains on appeal that the trial court unfairly limited his ability to cross-examine former police officer Larry Robbins regarding the reason for Robbins' termination from employment with the City of Johnson City as a member of the Drug Task Force. The proof during a jury-out hearing demonstrated that Robbins had complained to the city commissioners about sexual harassment within the task force. He was subsequently terminated for having done so. The bases upon which the discharge was premised were violation of a general order regarding chain of command, release of information not entrusted to him, and conduct unbecoming an officer. Robbins testified that he was never accused of planting evidence. The court ruled that in the absence of misconduct related to a criminal case, such as planting evidence or mistreating a defendant, the reason for Robbins' termination was not relevant and therefore not admissible.

On appeal, the defendant argues that Robbins' violation of a position of trust was directly relevant to his credibility. The defendant posits that under Tennessee Rule of Evidence 608, a witness' prior bad acts are admissible to impeach credibility if more probative than potentially prejudicial. The defendant claims he was hamstrung by the court's ruling excluding the evidence and that the exclusion was harmful error because this was a close case. Not surprisingly, the state maintains that the trial court correctly found the evidence irrelevant and that the defendant has failed to demonstrate that the evidence would have been more unfairly prejudicial than probative.

In order for evidence to be admissible, it must first be relevant. Tenn. R. Evid. 402. Thus, the defendant's assertion that the evidence regarding the reason for Robbins' termination is admissible under Rule 608 is pertinent only if the evidence is relevant. Upon consideration, we are unpersuaded that the trial court erred in finding the evidence irrelevant. The pertinent issue was Robbins' credibility. Although he was terminated for violating various rules of his employment, the

evidence demonstrates that he reported sexual harassment "that had already been investigated and kind of swept under the rug." He had made this report "to the chief's bosses, who were the city commissioners." Viewed in this context, we cannot say that the lower court abused its discretion in excluding the evidence.

### C - Shawna Whittaker's Testimony that the Defendant Rented Her Car

The defendant challenges the lower court's admission of Shawna Whittaker's testimony about the rental arrangement the defendant had relative to the witness's car. Ms. Whittaker testified that while she was living in Ohio, she left her car in her father's care. Her father told her that he was renting the car to the defendant. Ms. Whittaker received $200 in rental fees during the time she was in Ohio. When she returned to Tennessee, she had to have the car towed from a motel parking lot. She later saw the defendant, who told her not to worry because she was not in any trouble. The defendant's specific complaint is that Ms. Whittaker's testimony regarding the conversation with her father about the rental agreement was hearsay. On appeal, the state concedes as much but posits that the evidentiary admission was harmless error in light of other evidence that the defendant was arrested in possession of the car and had been seen driving the car in the weeks prior to his arrest.

We agree with the parties that Ms. Whittaker's testimony about the conversation with her father is hearsay. *See* Tenn. R. Evid. 801(c). Through this evidence, Ms. Whittaker offered her own testimony of her father's statements to prove the truth of the matter asserted, that the defendant was renting Ms. Whittaker's car. *See id.* No hearsay exceptions apply to this testimony. *See generally* Tenn. R. Evid. 803, 804.

Our task now becomes one of assessing what harm, if any, follows the erroneous admission of this testimony. The defendant claims that this was "crucial" evidence because it established a period of time in which the defendant could have had the vehicle. However, the undisputed evidence shows that the defendant and Ms. Benson arrived at the Fairfield Inn in the vehicle, which the defendant was known to have been driving in previous weeks. Members of the Drug Task Force kept the car under surveillance once it was parked in the Fairfield Inn parking lot. Shortly thereafter, drugs were recovered from the vehicle. Portions of Ms. Whittaker's testimony to which there was not a specific objection otherwise established that Ms. Whittaker, the owner of the vehicle, was out of the state on the date in question. Ms. Benson's testimony provided further proof that she and the defendant had been in the car on the date in question and that the defendant had crack cocaine in his possession while they were in the car. When the evidence is viewed in its totality, we fail to see harmful error in the erroneous admission of the hearsay testimony. *See* Tenn. R. App. P. 36(b) (relief from judgment will not be granted unless error had more probable than not effect on verdict or would prejudice judicial process).

## D - Defendant's Pending Arrest Warrants

The defendant complains that he was prejudiced by the state's repeated references to his pending arrest warrants. Prior to trial, the court considered the issue and ruled that the fact that the defendant had pending warrants was admissible but evidence about the nature of the charges would not be allowed. The defendant claims that the state tried to prejudice the jury against him by offering evidence of his pending arrest warrants by sponsoring testimony of multiple members of the Drug Task Force to this effect. He claims that this was an effort by the state to bolster a weak case by attempting to demonstrate bad character attributable to the defendant based upon the outstanding criminal charges. The state argues that evidence of the defendant's pending arrest warrants was important because it provided contextual background evidence to explain the officers' presence at the Fairfield Inn and their entry into the defendant's hotel room.

The general parameters regarding admissibility of a defendant's bad acts other than the crime on trial is found in Tennessee Rule of Evidence 404(b). Evidence of a defendant's prior crimes, wrongs, or acts generally is not admissible as character evidence of the defendant to prove that he committed the crime in question. Tenn. R. Evid. 404. The rationale underlying the general rule is that admission of such evidence carries with it the inherent risk of the jury convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than the conviction resting upon the strength of the evidence. *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994). The risk is greater when the defendant's prior bad acts are similar to the crime for which the defendant is on trial. *Id.*; *see also State v. McCary*, 922 S.W.2d 511, 514 (Tenn. 1996), *perm. app. denied* (Tenn. 2000). Nevertheless, evidence of a defendant's prior crimes, wrongs or acts may be admissible where it is probative of material issues other than conduct conforming with a character trait. Tenn. R. Evid. 404(b).

Our supreme court has recognized the need, in appropriate cases, to allow such evidence for purposes of illustrating a contextual background for other facts in the case. *State v. Gilliland*, 22 S.W.3d 266 (Tenn. 2000). In order for evidence to fall within this exception to the general rule, it must be relevant to an issue other than criminal propensity and the probative value of the evidence must outweigh its potential prejudicial effect. *Id.* at 271-72. Before such evidence is admitted, the state must establish that

(1)   the absence of the evidence would create a chronological or conceptual void in the state's presentation of its case;
(2)   the void created by the absence of the evidence would likely result in significant jury confusion as to the material issues or evidence in the case; and
(3)   the probative value of the evidence is not outweighed by the danger of unfair prejudice.

*Id.* at 272.

In this case, the defendant had outstanding arrest warrants, which at least implies the existence of other crimes, wrongs or acts. The state sought introduction of the evidence of the outstanding warrants in order to explain the presence of Drug Task Force officers at the hotel where the defendant was lodging. Without this explanatory evidence, the police conduct in conducting surveillance, creating a subterfuge to lure the defendant and his companion from their hotel room, storming into the room, and immediately subduing and restraining the defendant would appear egregious and inappropriate. It had the likelihood of creating confusion of the issues and the evidence. In order to limit any prejudice from the introduction of the evidence, the trial court limited the evidence to the existence of the warrants and excluded evidence of the underlying charges. The court gave a limiting instruction regarding the warrants. Upon our review of the record, we see no abuse of discretion in this ruling.

Moreover, we are not compelled to discern error in the state's repeated introduction of this evidence through various officers from the Drug Task Force. Each individual was explaining his presence at the hotel, and none did so in a way that implied more than that the defendant had pending warrants. The court's ruling limiting the evidence to the existence of the warrants and not the underlying charges and the limiting instruction the court gave to the jury regarding the warrants prevented any undue prejudice to the defendant as a result of the admissions.

**IV**

Next, we consider whether the trial court should have continued the trial upon the state's late disclosure of a witness' location. This issue pertains to witness Shawna Whittaker. Apparently, the state was unable to serve a subpoena on this witness until shortly before the trial, and the defense was unable to locate her prior to her appearance at the courthouse on the day of trial. The record reflects that the court allowed the defendant the opportunity to interview the witness prior to her taking the stand and instructed counsel to advise the court if any problems arose. The defense never made any complaint on the record. The defendant complains that his counsel could have investigated the witness more thoroughly with more time and that the court should have granted a continuance.

The record does not clearly reflect, however, that the defense ever requested a continuance because of the absence of the witness. There was a pre-trial defense motion for a continuance so that the defendant would have more time to consider a settlement agreement. The state supported the defense motion for a continuance because such would allow it more time to locate Ms. Whittaker. However, the defendant said nothing about any desire he had to locate Ms. Whittaker, and the court denied the motion. The defendant did not request a continuance on any basis on the day the trial began. The first time the defendant posited that the court should have granted a continuance was in his motion for new trial, in which he claimed that the witness changed her story during her trial and his counsel had been unable to rebut her claims due to inadequate preparation time.

We have serious reservations in reaching any conclusion other than that the issue has been waived by the defendant's failure to make a timely motion for continuance on the basis of his inability to locate Ms. Whittaker prior to trial. *See* Tenn. R. App. P. 36(a). Assuming *arguendo* that the issue has not been waived, the record reflects that the defendant has not established his entitlement to a new trial on this basis.

The decision whether to grant a motion for a continuance is a matter of discretion for the trial court, the denial of which will not be overturned on appeal absent a clear showing the trial court abused its discretion to the prejudice of the defendant. *State v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982); *Baxter v. State*, 503 S.W.2d 226, 230 (Tenn. Crim. App. 1973). In order to establish an abuse of discretion, the complaining party must make a clear showing of prejudice as a result of the continuance being denied. *State v. Teel*, 793 S.W.2d 236, 245 (Tenn. 1990).

In this case, the defendant offered no evidence at the motion for new trial to demonstrate that he could have, with more time, impeached Ms. Whittaker's testimony or otherwise caused a more favorable result for himself in his trial. Without something upon which to base a finding of prejudice, this court is not empowered to grant relief. *See id.*; *State v. Meeks*, 876 S.W.2d 121, 130 (Tenn. Crim. App. 1993) (no prejudice from trial court's denial of motion to continue where defendant failed to present proof at motion for new trial hearing).

## V

The defendant also challenges whether the trial court should have granted the defendant's motion for removal of trial counsel. The record reflects that the defendant was mistrustful of his attorneys, the court, and the proceedings. He filed written complaints and voiced his grievances throughout the pre-trial and trial proceedings. He called for investigation of his attorneys and the trial court. A few days prior to trial, the defendant read a letter to the court in which he alleged that the trial court was prejudiced against him, had defamed him, and threatened him. He claimed that his attorneys had violated the attorney/client privilege. He stated his intention to pursue investigation of the trial judge and one of his attorneys for "misconduct and violating my constitutional rights." The defendant never specifically requested that counsel be removed, although this was certainly the tenor of his complaint. For the first time on appeal, the defendant contends that the court should have allowed him to proceed *pro se*. He did not specifically request this remedy in the trial court. His efforts in the trial court appear to be directed more to removal of counsel than to the exercise of the right of self-representation. In his motion for new trial, he alleged that the trial court should have allowed his attorneys to withdraw and should have appointed other counsel.

An indigent defendant is constitutionally guaranteed the right to assistance of appointed counsel. *See* U.S. Const. amend VI; Tenn. Const. art. I, § 9. Neither the federal nor state constitutions requires, however, that an indigent defendant receive counsel of his choice, or counsel with whom the defendant enjoys "special rapport, confidence, or even a meaningful relationship." *State v. Carruthers*, 35 S.W.3d 516, 546 (Tenn. 2000), *cert. denied*, 533 U.S. 953, 121 S. Ct. 2600 (2001). The baseline guarantee is one of effective counsel, not preferred counsel. *Id.*

When considering whether to permit withdrawal of counsel, the court may act upon a showing of good cause for withdrawal. Tenn. Code Ann. § 40-14-205 (1997). On appellate review, we examine the trial court's ruling only for abuse of discretion. *State v. Russell*, 10 S.W.3d 270, 274 (Tenn. Crim. App. 1999).

In this case, the defendant demonstrated his mistrust of counsel; however, he did not demonstrate that counsel was failing to perform in the defendant's best interests, had a conflict of interests, or otherwise was unable to discharge the task of representing the defendant. In fact, the trial judge remarked based upon his own institutional knowledge that the defendant had enjoyed a positive relationship with lead counsel in another case in which counsel had obtained an acquittal, that counsel had diligently prepared the case and cut short his vacation to prepare for trial, that the defendant had been disruptive and his "own worst enemy" throughout the proceedings, and that the defendant's dissatisfaction with the process was as a result of the defendant's own actions, rather than any shortcomings of counsel.

In reviewing the record, we are completely convinced that the trial court's ruling was not an abuse of discretion. The facts simply do not support the defendant's request for removal of counsel.

Moreover, we are unimpressed with the defendant's eleventh-hour contention that he should have been allowed to proceed *pro se*. The record is devoid of any indication that he sought that type of relief in the lower court. For that reason alone, he has waived any opportunity he might otherwise have to pursue that form of relief in the appellate courts. *See* Tenn. R. App. P. 36(a) (party who failed to make effort to prevent error at trial level not entitled to relief on appeal). Additionally, although the defendant apparently engaged in some unusual and perhaps ill-advised behavior in the lower court, there is nothing in the record to indicate that his conduct was such that he implicitly waived or forfeited his right to counsel altogether. *See generally Carruthers*, 35 S.W.3d 516.

## VI

Our next area of inquiry is whether the trial court erred in its instruction to the jury regarding Lynn Benson's guilty plea to facilitation of cocaine sale. The defendant claims that the trial court's instruction was deficient in that it failed to advise the jury to carefully evaluate Ms. Benson's testimony in light of her last-minute plea agreement with the state. He claims that the instruction given misled the jury into believing that Ms. Benson's guilty plea was based on conduct in selling drugs for the defendant, rather than on other criminal activity.

The record reflects that as part of a plea agreement with the state which was formalized just before the defendant's trial, Ms. Benson, who was originally charged as a co-defendant, agreed to testify truthfully as a state's witness in exchange for the state's *nolle prosequi* of charges against her in the present case and for her guilty plea to facilitation of sale of cocaine in a separate case with a recommendation for a two-year probated sentence.

When a state's witness offers testimony procured via plea agreement, concerns of the defendant's rights to due process and a fair trial are implicated. *State v. Bolden*, 979 S.W.2d 587, 590 (Tenn. 1998). In order to protect those rights, the following safeguards must be met before such testimony may be admitted:

(1)     full disclosure of the terms of the agreements struck with the witnesses;
(2)     the opportunity for full cross-examination of those witnesses concerning the agreements and the effect of those agreements on the testimony of the witnesses; and
(3)     instructions cautioning the jury to carefully evaluate the weight and credibility of the testimony of such witnesses who have been induced by agreements with the State to testify against the defendant.

*Id.*

In this case, the plea agreement itself was read into the record. The evidence clearly established that the charge to which the witness was pleading guilty was in another case, and the charge in the present case was being *nolle prosequied* by the state. The defendant engaged in a very thorough and searching cross-examination of the witness. The jury was instructed at the time of Ms. Benson's testimony that her plea agreement with the state did not take from the jury its duty of determining credibility of witnesses and the weight to be placed on witness testimony. At the conclusion of proof, the jury was instructed in more general but thorough terms about its role as the exclusive judge of witness credibility and of weight to be given witness testimony.

We conclude that the trial court did not err in its instructions relative to Ms. Benson's testimony.

## VII

We now consider whether the trial court properly instructed the jury on the definition of the term "knowing." The Criminal Code contains the following definition:

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-302(b) (1997). The defendant complains that the trial court erred in omitting from the charge the portion of the definition embodied in the second sentence of the statutory definition. The defendant claims that this error was not harmless because the case was a close one.

The defendant does not claim, however, that possession of cocaine with intent to resell is a result-of-conduct offense requiring such instruction. For the reasons that follow, we conclude that it is not.

A so-called result-of-conduct offense is typified by a single element, that being the result of the conduct itself. *State v. Ducker*, 27 S.W.3d 889, 896 (Tenn. 2000). The culpable mental state accompanies the result, rather than the nature of the conduct. *Id.*

Possession of cocaine for resale requires that the defendant "knowingly . . . [p]ossess a controlled substance with intent to . . . sell such controlled substance." Tenn. Code Ann. § 39-17-417(a)(4) (Supp. 2001). As defined by the proscriptive statute, the *mens rea* of knowing focuses on the defendant's possession of cocaine. Put another way, the crime requires that the defendant be aware that he is in unlawful possession of cocaine. Thus, cocaine possession with intent to resell focuses on the nature of the defendant's conduct and not a particular result.

The trial court did not err in its instructions relative to the knowing element of cocaine possession.

## VIII

Finally, we take up the issue whether the trial court erred in providing the jury with excerpts of the testimony of certain witnesses, rather than transcripts of the entire testimony of these witnesses. This issue pertains to an inquiry the jury made during deliberations about the testimony of two members of the Drug Task Force regarding the identity of the individual who opened the ash tray in which the cocaine was discovered.

When a jury requests to rehear or review evidence during its deliberations, the trial court may, in its discretion, allow the jury to do so. *State v. Jenkins*, 845 S.W.2d 787, 793 (Tenn. Crim. App. 1992). In ruling on the request, the court must be guided by ABA Standard 15-4.2. *Id.* The ABA Standard provides

    (a)    If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted to the courtroom. Whenever the jury's request is reasonable, the court, after notice to the prosecutor and counsel for the defense, shall have the requested parts of the testimony read to the jury and shall permit the jury to reexamine the requested materials admitted into evidence.

    (b)    The court need not submit evidence to the jury for review beyond that specifically requested by the jury, but in its discretion the court may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

ABA Standard 15-4.2; *see Jenkins*, 843 S.W.2d at 793.

In this case, the jury asked how two state's witnesses had testified when asked the identity of the person who opened the ash tray in the car the defendant was driving. After hearing arguments from the parties, the court ruled that it would provide the jury with those portions of the trial transcript which contained the pertinent testimony. Although the court might have been more squarely within the spirit of ABA Standard 15-4.2 by having these portions of the transcript read to the jury than by providing the jury with the transcript itself, we hold that there was no abuse of discretion in providing a partial transcript, rather than the entire, much more lengthy transcript of these two witnesses' testimony. *See Van Holt v. Rainbolt*, 42 Tenn. (2 Cold.) 139, 141 (1865) (The practice of allowing a re-statement to the jury, of such portions of the evidence as they may desire to hear, at any time before delivering their verdict, and in the presence of the Court, is too well established to be called in question.); *State v. Steven Radley*, No. 01C01-9311-CC-00382, slip op. at 7 (Tenn. Crim. App., Nashville, July 14, 1994) (trial court did not abuse discretion in allowing jury to rehear requested portions of tapes); *cf. State v. Nathaniel Allen*, No. E1999-02209-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Knoxville, Oct. 19, 2000) (trial court did not abuse its discretion by complying with jury request for assistance in locating a particular phrase on a tape that was a trial exhibit).

After considering all of these issues, we find none which warrant relief for the defendant. Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-15-